UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LEAH LEVINE,
    Plaintiff

v.

NATIONAL RAILROAD PASSENGER
CORPORATION,
    Defendant

Civil Action No. 13-1696 (CKK)

**MEMORANDUM OPINION**
(February 18, 2015)

This action arises from Plaintiff Leah Levine's experiences bringing her service dog on Amtrak trains in the Northeast Corridor. Plaintiff brings claims on her own behalf and on behalf of a putative class of certain other disabled passengers against Defendant National Railroad Passenger Corporation ("Amtrak") pursuant to Part A and Part B of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-12165; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701-797; and the District of Columbia Human Rights Act (the "DCHRA"), D.C. Code Ann. §§ 2-1401.01–2-1411.06.[1] Each claim relates to Amtrak's alleged practice of storing luggage in "mobility aid" seating areas of Amtrak trains. Plaintiff seeks a declaratory judgment that Amtrak's alleged conduct is discriminatory; money damages for past occasions of the alleged discrimination; and injunctive relief with respect to Amtrak's policies and practices regarding the "mobility aid" seating areas. Before the Court is Defendant Amtrak's [19] Motion to Dismiss Plaintiff's First Amended Complaint and/or Strike Plaintiff's Rule 23 Class Allegations. Defendant argues that the First Amended Complaint must be dismissed

---

[1] "Because the Rehabilitation Act and the DCHRA are '*in pari materia*' with Title II of the ADA and cases interpreting those laws are 'interchangeable,'" the Court will focus on Title II of the ADA. *Equal Rights Ctr. v. D.C.*, 741 F. Supp. 2d 273, 283 (D.D.C. 2010) (citing *Am. Council of the Blind v. Paulson,* 525 F.3d 1256, 1262 n.2 (D.C. Cir. 2008), and *Teru Chang v. Inst. for Public–Private P'ship,* 846 A.2d 318, 324 (D.C. 2004)).

1

because it fails to state a claim under the relevant statutes, because Plaintiff lacks Article III Constitutional standing because she has not suffered an injury in fact, and because Plaintiff has no prudential standing to pursue violations of the relevant statutes. In the alternative, Defendant argues that the Amended Complaint's class allegations should be stricken because Plaintiff has failed to define an ascertainable class. Upon consideration of the pleadings,[2] the relevant legal authorities, and the record as a whole, the Court GRANTS Amtrak's [19] Motion to Dismiss on the basis that Plaintiff has no standing to bring the claims in this action. Therefore, the Court does not consider Defendant's other arguments in favor of dismissal; nor does the Court consider Defendant's request, in the alternative, to strike the class allegations. Accordingly, the Court DISMISSES all claims against Defendant Amtrak and dismisses this action in its entirety.

## I. BACKGROUND

For the purposes of this motion, the Court accepts as true the factual allegations in Plaintiff's Amended Complaint.[3] The Court does "not accept as true, however, the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014). The Court recites the facts pertaining

---

[2] The Court's consideration has focused on the following documents:
- First Amended Complaint, ECF No. 14 ("Am. Compl.");
- Def.'s Motion to Dismiss Plaintiff's First Amended Complaint and/or to Strike Plaintiff's Rule 23 Class Allegations, ECF No. 19 ("Def.'s Mot. to Dismiss");
- Pl.'s Mem. of Points and Authorities in Opp'n to Defendant's Mot. to Dismiss Pl.'s First Am. Compl. and/or to Strike Pl.'s Rule 23 Class Allegations, ECF No. 20 ("Pl.'s Opp'n"); and
- Def.'s Reply in Supp. of its Mot. to Dismiss Plaintiff's First Am. Compl. and/or Strike Pl.'s Rule 23 Class Allegations, ECF No. 23 ("Def.'s Reply").

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

[3] By stipulation of the parties, Plaintiff filed an Amended Complaint on January 24, 2014.

to the issues raised in the pending motion, focusing on those facts relevant to the standing inquiry in which the Court engages.

Plaintiff suffers from severe physical disabilities because of multiple sclerosis. Am. Compl. ¶ 15. Specifically, her condition inhibits her ability to balance and walk and causes visual disruption and sensory confusion when she is in crowded spaces. *Id.* To assist her in coping with the symptoms she experiences, Plaintiff uses a service dog, a golden retriever named Linus, who accompanies her at all times. *Id.* ¶ 16. Among other tasks that Linus performs, he is trained to walk slightly in front of Plaintiff to help her navigate crowds and crowded spaces. *Id.* ¶ 18.

Plaintiff frequently travels on Amtrak between Metropark, New Jersey, and Union Station, in Washington, D.C. *Id.* ¶ 22. When she travels on Amtrak, Plaintiff books mobility aid seating, which features more open floor space in front of the seats than other seating on the train. *Id.* ¶ 24. The mobility aid seating allows Linus to be at her feet and to move around unobstructed. *Id.* Plaintiff alleges that the mobility aid seating is the only seating that can accommodate her disabilities. *Id.* Plaintiff alleges that the mobility aid seating areas are consistently cluttered with luggage belonging to other passengers. *Id.* ¶ 25. Plaintiff also alleges that she is consistently "confronted with objections, exasperation, rebukes, and outright hostility" when she asks crew members to move such luggage. *Id.* ¶ 27. In addition to her general allegations, Plaintiff describes five specific experiences regarding her ability to sit in mobility aid seating; all pertain to travel between Metropark, N.J., and Union Station, in Washington, D.C. *Id.* ¶ 33. The Court reviews those five experiences here:

- **March 1, 2013** – After boarding, Plaintiff approached a mobility aid seating area, together with Linus, and discovered several large pieces of luggage occupying the floor space in that area. *Id.* ¶ 34. Plaintiff feared that the bags would present a dangerous obstacle for her and for Linus and asked a crew member to remove them.

*Id.* After the crew member refused, Plaintiff complained to the conductor, who apologized. *Id.* ¶ 35. Plaintiff does not allege where she ultimately sat.[4]

- **August 2, 2013** – Upon boarding, Plaintiff and Linus sat in a mobility aid seating area. *Id.* ¶ 36. There were bags stacked in the mobility aid seating area across the aisle from where she was sitting. *Id.* Because she was concerned that luggage would fall over and present an obstacle for her and for Linus, Plaintiff asked a crew member to move the bags or to ask the owners of those bags to move them. *Id.* ¶ 37. The crew member refused, stating that the bags were far enough away from her. *Id.* Subsequently, one of the bags fell into the aisle, allegedly coming within inches of hitting Linus and blocking the aisle. *Id.*¶ 38; *see id.*, Ex. B (photograph of bag in aisle). The crew member again refused to move the bags to a nearby luggage compartment and instead restacked the bags in a different configuration. *Id.* ¶ 38; *id.*, Ex. C (photograph of restacked bags).[5] Plaintiff alleges that she remained agitated and concerned for her safety for the remainder of that journey. *Id.* ¶ 39.

- **November 1, 2013** – Upon boarding, Plaintiff asked a crew member for assistance in finding mobility aid seating and was told she would have to walk along the train to find a seat. *Id.* ¶ 40. She walked through two cars, which did not have any mobility aid seating. *Id.* She passed another crew member who told her that she had to continue walking. *Id.* Because she could no longer keep her footing as the train moved, she stopped and requested additional assistance. *Id.* A third crew member then helped her find a seat. *Id.* Plaintiff was humiliated and in tears. *Id.*

- **December 6, 2013** – During her train trip, Plaintiff walked to the café car to get something to eat. *Id.* ¶ 41. There was mobility aid seating in that car but she could not sit down because a garbage can and a storage crate were in the mobility aid seating area. *Id.*; *see id.*, Ex. D (close-up photograph of garbage can and storage crate).

- **January 3, 2014** – After Plaintiff sat down in a vacant mobility aid seating area, a crew member placed a large bag, tagged "heavy," in the clear floor space in front of her, standing upright. *Id.* ¶ 42. Plaintiff complained that, if the bag fell over, it would present a dangerous obstacle to her and to Linus. *Id.* In response, the crew member laid the bag on its back, such that it took up more floor space. *Id.*[6]

---

[4] The Court notes that, in her original Complaint, Plaintiff alleged that, on this occasion, the conductor moved her to business class and brought her complimentary bottles of water. Original Complaint, ECF No.1 ("Compl."), ¶ 34.

[5] Based on photographs of the bags that Plaintiff attached to her Amended Complaint, it appears that the bags were restacked in a configuration that was more horizontal than the original configuration and, accordingly, less prone to toppling over. *Compare* Am. Compl., Ex. A *with id.*, Ex. C.

[6] The photograph of the bag on its back that Plaintiff submitted suggests that, while taking up more floor space, the re-oriented bag was less likely to fall or otherwise shift during transit. *See*

In addition to these five specific experiences while traveling, Plaintiff alleges that, on various occasions, she canceled trips to Washington, D.C., rather than experience the physical and emotional strain of traveling by Amtrak. *Id.* ¶ 43. Specifically, Plaintiff alleges that on the first weekend of June 2013, when hot and humid weather exacerbated her symptoms, she decided not to make the trip from New Jersey to Washington, D.C. *Id.* ¶ 44. Plaintiff alleges that she canceled the trip because she was afraid that she would not be able to handle the usual routine of searching for mobility aid seating and confronting crew members regarding the need to clear a seating area for her. *Id.*

## II. LEGAL STANDARD

Pursuant to Article III of the Constitution, Defendant moves to dismiss this action on the basis that this Court has no jurisdiction because Plaintiff lacks standing. "Article III of the Constitution limits the jurisdiction of federal courts to 'actual cases or controversies between proper litigants.'" *Mendoza v. Perez*, 754 F.3d 1002, 1010 (D.C. Cir. 2014) (quoting *Fla. Audubon Soc'y v. Bentsen,* 94 F.3d 658, 661 (D.C. Cir. 1996)). Because standing is a "threshold jurisdictional requirement," a court may not assume that Plaintiff has standing in order to proceed to evaluate a case on the merits. *Bauer v. Marmara*, 774 F.3d 1026, 1031 (D.C. Cir. 2014).

A plaintiff "bears the burden of showing that he has standing for each type of relief sought." *Summers v. Earth Island Inst.,* 555 U.S. 488, 493 (2009). "To establish constitutional standing, plaintiffs 'must have suffered or be imminently threatened with a concrete and particularized injury in fact that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision.'" *Mendoza*, 754 F.3d at 1010 (quoting

---

Am. Compl., Ex. E. However, the photograph also shows that there was sufficient space for Plaintiff and her service animal.

5

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 134 S. Ct. 1377, 1386 (2014); *see also Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). While the Court must assume that the factual allegations in a complaint are true in resolving a motion to dismiss, *see Holistic Candlers and Consumers Ass'n v. FDA,* 664 F.3d 940, 943 (D.C. Cir. 2012), "a plaintiff's factual allegations 'will bear closer scrutiny' in resolving issues of standing, 'than in resolving a 12(b)(6) motion for failure to state a claim.'" *Ryan, LLC v. Lew*, 934 F. Supp. 2d 159, 165 (D.D.C. 2013) (quoting *Grand Lodge of the Fraternal Order of Police v. Ashcroft,* 185 F. Supp. 2d 9, 13-14 (D.D.C. 2001)).

### III. DISCUSSION

Defendant argues that the First Amended Complaint should be dismissed because Plaintiff lacks Article III standing. Specifically, Defendant argues that none of the events that the Amended Complaint describes qualify as an "injury in fact" necessary to support standing for Constitutional purposes. Plaintiff responds that she has standing because of five incidents in which she experienced allegedly discriminatory conduct while traveling on Amtrak. The Court first analyzes whether there is a legal basis for the alleged injuries to qualify as injuries-in-fact for the purposes of standing. The Court then addresses each of the incidents on which Plaintiff relies. The Court concludes that Plaintiff has not sufficiently alleged the invasion of a legally protected interest, with respect to any of the enumerated incidents, as necessary to support standing in this action. Because the Court concludes that Plaintiff has not sufficiently alleged facts supporting her standing in this action, the Court concludes that it has no jurisdiction over this matter and does not address Defendant's other arguments in favor of dismissal.[7]

---

[7] Because the Court concludes that Plaintiff cannot satisfy the irreducible minimum of Article III standing, the Court need not address Defendant's argument that Plaintiff has no prudential

**A. Plaintiff Does Not Have Protected Interest in Sitting in a Mobility Aid Seating Area**

"Under Article III, a party who invokes the court's authority 'must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" *Bauer*, 774 F.3d 1026, 1032 (quoting *Lujan*, 504 U.S. at 560). "A legally cognizable interest means an interest recognized at common law or specifically recognized as such by the Congress." *Sargeant v. Dixon*, 130 F.3d 1067, 1069 (D.C. Cir. 1997) (citing *Lujan*, 504 U.S. at 578). A person cannot claim an injury on behalf of another person. *Sharp v. Capitol City Brewing Co., LLC*, 680 F. Supp. 2d 51, 57 (D.D.C. 2010) (citing *Lujan*, 504 U.S. at 563). Although courts must generally assume, for the purposes of evaluating standing, that a plaintiff states a valid legal claim, *see Holistic Candlers,* 664 F.3d at 943, when an alleged injury arises from a statute, as in this case, "questions concerning standing and the availability of a private cause of action under the statute may be intertwined," and the Court must address standing with respect to that alleged injury before addressing the merits. *Bauer,* 774 F.3d at 1029.

Amtrak is subject to Title II of the ADA. *Disabled in Action of PA. v. Nat'l Passenger R.R. Corp.*, 418 F. Supp. 2d 652, 655 (E.D. Pa. 2005). Part B of Title II pertains to transportation entities such as Amtrak. *Id.* at 656. It details specific actions that are considered discriminatory under section 12132 of that Title. *See id.* (quoting 42 U.S.C. § 12162(a)(1) and (a)(3)(A)). Relevant to the instant action, the statute requires that one passenger car per train be "readily accessible and usable by individuals with disabilities" in accordance with the Part B regulations. 42 U.S.C. § 12162(a)(1). In turn, the regulations, promulgated by the Department of Transportation, specify that vehicles are considered to meet this standard if they satisfy the

---

standing. *See Arpaio v. Obama*, 27 F. Supp. 3d 185, 202 n.10 (D.D.C. 2014) (citing *Grocery Mfrs. Ass'n v. EPA*, 693 F.3d 169 (D.C. Cir. 2012)).

requirements set forth in those regulations. *See* 49 C.F.R. § 37.7. Plaintiff argues that her service dog is a "mobility aid" and therefore she is a beneficiary of the design requirements pertaining to mobility aids. While neither the statute nor the regulations define mobility aid explicitly, the language of the regulations requires the conclusion that a service dog is not a mobility aid. The regulations describe the requirements for "spaces for persons who wish to remain *in* their wheelchairs or mobility aids." *Id.* § 38.125 (emphasis added). This description indicates that "mobility aid" refers to a wheelchair-like mechanical device that a disabled person can enter and exit. Such description does not encompass a service dog. Other provisions of the regulations confirm this interpretation. *See, e.g., id.* § 38.115 (requiring sufficient turning and maneuvering room); *id.* § 38.125(a)(1) (requiring level-change mechanisms to allow mobility aid users to change seating levels); *id.* § 38.125(b)(5) (referring to wheeled features of mobility aids). In addition, the regulations refer explicitly to service animals only once, in a section unrelated to mobility aids, and do not refer to or describe service animals as mobility aids. *See id.* § 37.167(d) ("The entity shall permit service animals to accompany individuals with disabilities in vehicles and facilities."). Because a service dog is not a mobility aid, none of the mobility aid provisions in the regulations are applicable to Plaintiff's circumstances. *Cf. Sharp*, 680 F. Supp. 2d at 57 (no standing for Plaintiff to raise ADA claims regarding restroom features that he was not capable of accessing). In sum, these regulations and the statutory provision they implement do not create a cognizable interest that could have been invaded in the incidents that Plaintiff allegedly experienced. Nor do the other provisions of the statute or the implementing regulations create, for Plaintiff, a cognizable interest that has been invaded.

   The statute contains requirements for wheelchair parking and storage. *See* 42 U.S.C. § 12162(a)(3)(A). Since Plaintiff does not use a wheelchair, this provision is not at issue and

cannot be the source of an injury in fact. The statute also requires that table service be provided to people in wheelchairs and that auxiliary aids and services be provided to insure equivalent food service is available to people with disabilities. *Id.* § 12162(4). This provision is not at issue in this litigation, and Plaintiff does not look to this provision for the source of her alleged injury. Nor does Plaintiff allege violations of other provisions of the regulations. Pursuant to 49 C.F.R. § 37.167, entities must "permit service animals to accompany individuals with disabilities in vehicles and facilities." Plaintiff never alleges that she was ever prohibited from bringing her service dog, Linus, with her. Nor does Plaintiff allege a violation of 49 C.F.R. § 37.5, which prohibits, in general terms, discrimination against an individual in connection with the provision of transportation service. In sum, Plaintiff cannot rely on Part B of Title II for her injury in fact. It does not establish any legally protected interests with respect to mobility aid seating for people with disabilities who use service animals.

Part A of Title II pertains to public entities generally. It provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits or the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Part A regulations, promulgated by the Department of Justice as required by the statute, do not apply to transportation entities like Amtrak. *See Boose v. Tri–County Metro. Transp. District of Oregon*, 587 F.3d 997, 1001-02 (9th Cir. 2009); 42 U.S.C. § 12134 ("Regulations under subsection (a) of this section shall include standards applicable to facilities and vehicles covered by this part, other than facilities, stations, rail passenger cars, and vehicles covered by part B of this subchapter."). Indeed, the DOJ regulations themselves state that "[t]o the extent that public transportation services, programs, and activities of public entities are covered by subtitle B of title II of the ADA (42 U.S.C.

§ 12142), they are not subject to the requirements of this part." 28 C.F.R. § 35.102(b). Accordingly, while the Part A regulations include a requirement that public entities make reasonable modifications to avoid discrimination on the basis of disability, *see Disabled in Action of P.A.*, 418 F. Supp. 2d at 656, Amtrak is not subject to such a requirement. For the purposes of the standing analysis in which the Court must engage, Plaintiff has no right to seek a modification beyond the specific requirements of Part B, discussed above. Accordingly, any failure of Amtrak to implement such a modification does not constitute an injury to Plaintiff with respect to a legally cognizable interest.

In sum, Title II of the ADA does not create a protected legal right for a disabled person using a service animal to sit in a mobility aid seating area or to demand that those seating areas be clear of baggage or other objects. "Because the Rehabilitation Act and the DCHRA are '*in pari materia*' with Title II of the ADA and cases interpreting those laws are 'interchangeable,'" the Court concludes that those sources of law also do not create cognizable interests applicable to these circumstances. *Equal Rights Ctr.*, 741 F. Supp. 2d at 273. The Court notes as well that Plaintiff does not argue that the source of her injury is an interest created by Rehabilitation Act or by the DCHRA separate and apart from Title II of the ADA.

**B. Plaintiff Has Not Alleged an Invasion of a Protected Legal Right**

Irrespective of the Court's conclusion that Plaintiff does not have Article III standing to raise her claims because she does not have a protected legal interest in sitting in a mobility aid seating area, the Court further finds that Plaintiff does not have standing because she has not alleged that she was unable to sit in mobility aid seating during any of the alleged incidents.

The Court first addresses the incident that occurred on December 6, 2013, involving seating in the café car because that is the only incident in which Plaintiff alleges that she was

unable to sit down. *See id.* ¶ 41. Specifically, she alleges that she was unable to sit down in the café car because of a garbage can and a storage crate located in the mobility aid seating idea.[8] *Id.* However, the Court concludes that her inability to sit down in the mobility aid seating area of the café car was not an invasion of a "legally protected interest."

Plaintiff never claims that her inability to sit down violated an interest that would have existed at common law. Nor is the Court aware of any such violation. Plaintiff does claim, however, that the absence of compliance with the ADA in the five incidents she enumerates—including this one—is enough to satisfy the Constitutional requirement of injury in fact. However, the Court concludes, above, that the ADA does not create, for Plaintiff, a legal interest in sitting in a mobility aid seating area or a legal interest in having those areas clear of baggage. Therefore, none of the requirements of Title II of the ADA create any legally cognizable interests that were invaded—for the purposes of establishing standing—when Plaintiff was unable to sit down in the mobility aid seating area of the café car. Accordingly, Plaintiff has not alleged facts that would support her standing to pursue the claims in this action by virtue of the café car incident.

The Court next addresses the four other incidents enumerated in the Amended Complaint, which involved Plaintiff searching for a seat on the train and issues relating to the storage of baggage near the mobility aid seating areas. *See* Am. Compl. ¶¶ 34-40, 42. With respect to these incidents, Plaintiff never alleges that she was unable to find a seat in a mobility aid seating area.

---

[8] The Court notes, however, that Plaintiff never suggests that she was unable to sit for the duration of that particular journey. She only alleges that she was unable to sit in the café car when she visited it in the midst of her journey. Even construing the complaint in the light most favorable to Plaintiff, as the Court must, the Court concludes that, given Plaintiff's description of this incident and her enumeration of other incidents in which she faced challenges with respect to mobility aid seating, Plaintiff was able to sit for the remainder of this particular journey in a mobility aid seating area in a passenger car.

Regarding the March 1, 2013, incident, Plaintiff recounts how there was luggage in a mobility aid seating area and how a crew member refused to move it. *See id.* ¶ 34-35. In the Amended Complaint, Plaintiff does not specify where she ultimately sat, but notably she does not allege that she was unable to sit on that trip with space for her service dog. *See id.* Similarly, on August 2, 2013, Plaintiff sat in a mobility aid seating area where bags were stacked across the aisle from her seating area. *Id.* ¶ 36-37. While Plaintiff asked crew members to move the bags that were located across from her seat, she does not allege that she was unable to sit in a mobility aid seating area. Third, on November 1, 2014, Plaintiff had difficulties finding a seat but was ultimately able to find a seat in a mobility aid seating area with the assistance of a crew member. *Id.* ¶ 40. Fourth, on January 3, 2014, Plaintiff asked a crew member to move a bag in the mobility aid seating area in which she was already seated. *Id.* ¶ 42. In sum, Plaintiff never alleges, with respect to these four incidents, that she was unable to sit with her service dog, Linus, for the duration of the trip. Moreover, in reviewing the photographs attached as exhibits to the Amended Complaint that show baggage in the area where she is seated with her service dog, it is clear that there is sufficient room for the service animal. *See* Am. Compl., Exs. B, E.

    The Court has concluded, above, that her failure to obtain a seat in the mobility aid seating area of the café car did not constitute the invasion of a cognizable legal interest. The same is true with respect to the four enumerated incidents regarding luggage in and around mobility aid seating areas in passenger coach cars. Plaintiff never alleged that she was unable to find a seat in a mobility aid seating area—irrespective of the Court's conclusion that the statute does not provide her a legal interest in sitting in those seating areas. For an injury to pass Constitutional muster, Plaintiff must have experienced the injury herself. *See Sharp*, 680 F. Supp. 2d at 57. In all four of these incidents, she was able to find a seat with Linus. Merely observing

luggage in various configurations around her is not enough to constitute an injury. Indeed, the ADA regulations themselves only require the seating spaces to be clear when a wheelchair or mobility aid user is using that space. *See* 49 C.F.R. § 38.127 ("Seating spaces may have fold-down or removable seats to accommodate other passengers when a wheelchair or mobility aid user is not occupying the area."). Therefore, there can be no injury in fact as a result of storage of luggage in portions of mobility aid seating areas that are not occupied by individuals with disabilities who are legally entitled to use those seating areas.

Finally, the Court addresses whether any emotional distress resulting from these incidents could create an injury in fact even if the underlying experiences themselves do not amount to such an injury. Plaintiff alleges in her Amended Complaint emotional distress from her experiences searching for mobility aid seating and seeking to compel Amtrak crew members to move luggage stored in proximity to those locations. *See, e.g.*, Am. Compl. ¶ 40 (difficulty finding seat left Plaintiff humiliated and in tears); *id.* ¶ 39 (Plaintiff agitated and concerned for safety during trip); *id.* ¶ 43 (Plaintiff concerned about taking additional trip due to potential emotional consequences). From the pleadings, it is unclear whether Plaintiff relies on these experiences to support her argument that she has standing. *See* Pl.'s Opp'n at 17. Regardless, "emotional harm—in and of itself—is not sufficient to satisfy Article III's injury in fact requirement." *Al-Aulaqi v. Obama*, 727 F. Supp. 2d 1, 25 (D.D.C. 2010) (citing *Humane Soc'y of U.S. v. Babbitt,* 46 F.3d 93, 98 (D.C. Cir. 1995)). "Instead, a plaintiff can only establish an Article III injury in fact based on emotional harm if that alleged harm stems from the infringement of some 'legally protected' or 'judicially cognizable' interest that is either 'recognized at common law or specifically recognized as such by the Congress.'" *Id.* (citing *Lujan,* 504 U.S. at 560; *Bennett v. Spear,* 520 U.S. 154, 167 (1997); and *Sargeant v. Dixon,* 130 F.3d at 1069). In order to

satisfy the requirements of standing, notwithstanding allegations of emotional harm, Plaintiff must allege an injury resulting from the invasion of a legally protected interest. As stated above, Plaintiff has not done so here.

In all, Plaintiff has not alleged a cognizable injury in fact with respect to any of the incidents on which she relies. Therefore, none of these incidents give her standing to pursue either backward-looking monetary relief, seeking compensation for the harm she allegedly experienced, or forward-looking injunctive relief, seeking to require Amtrak to change its practices. Furthermore, since she does not have standing to pursue the claims pertaining to her own experiences on Amtrak trains traveling between New Jersey and Washington, D.C., she certainly does not have standing to pursue claims with regard to other Amtrak lines on which she has never traveled.

## IV. CONCLUSION

For the foregoing reasons, Defendant Amtrak's [19] Motion to Dismiss is GRANTED. Specifically, the Court concludes that Plaintiff lacks standing to bring the claims in this action. Because of the lack of standing of Plaintiff—the putative class representative—the Court need not independently analyze whether the class allegations in the complaint should be stricken as these claims are dismissed as well. Accordingly, all claims are dismissed, and this action is dismissed in its entirety. An appropriate Order accompanies this Memorandum Opinion.

Dated: February 18, 2015

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge